UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETS

Docket No.: 12-CV-10805-NMG

DISCOUNT VIDEO CENTER, INC.,

      Plaintiff,

      v.

DOES 1-29,

      Defendants

**DOE NO. 22'S ANSWER AND**
**COUNTERCLAIMS AGAINST DISCOUNT VIDEO CENTER, INC.,**
**JON NICOLINI AND COPYRIGHT ENFORCEMENT GROUP, LLC**

      Doe 22 answers the plaintiff's Complaint for Copyright Infringement as follows, and asserts counterclaims against Discount Video Center, Inc. and counterclaim defendants by joinder Jon Nicolini and Copyright Enforcement Group, LLC, who conducted the investigation leading to this lawsuit and who prepared the false and deceptive affidavit used to force settlement by innocent subscribers who are not liable for any infringement of the plaintiff's copyright.

1. The defendant admits that the Court has subject matter jurisdiction over claims arising under federal copyright statutes.

2. The defendant admits that he or she resided in Massachusetts at the time of the alleged infringement, and that venue is proper. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the remaining allegations in this paragraph.

1

3.  The defendant admits that he or she resided in Massachusetts at the time of the alleged infringement, and that the United States District Court for the District of Massachusetts has personal jurisdiction over the defendant and venue is proper. The defendant further admits having a contract with Comcast for internet service at the time of the alleged infringement.  The defendant denies the remaining allegations in this paragraph.

4.   The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph.

5.  The defendant denies the allegations in this paragraph. Exhibit B does not establish any collaboration by the Massachusetts defendants or that they downloaded or uploaded a particular copy of *Anal Cum Swappers 2* "within a limited period of time."

6.  The defendant admits the allegations in this paragraph.

7.  The defendant agrees that at most the plaintiff knows the IP address assigned to the defendant's Comcast account at the time of the alleged downloading. The defendant denies that knowing the account through which copyrighted material was allegedly downloaded in any way gives the plaintiff good grounds, reasonable grounds or a good faith basis for alleging that the defendant subscriber/account holder engaged in the alleged infringing activity.

8.  The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph.

9.  The defendant denies that this paragraph accurately describes the operation of BitTorrent. The defendant agrees that a participant in a BitTorrent swarm is almost

2

certainly "taking copyrighted material through many ISPs in numerous jurisdictions around the country," and notes that BitTorrent swarms operate internationally.

10. The defendant denies that this paragraph accurately describes the operation of BitTorrent.

11. The defendant denies that it matters, for purposes of assessing joinder, that the infringers downloaded the "same" torrent file, and denies that there is any evidence that the defendants took part "in the same series of transactions."

12. The defendant denies the allegations in this paragraph. BitTorrent software shows the IP address of the device through which other downloaders connect to their ISP. That IP address does not identify "the computer. . .which [is] sharing files in cooperation with one's own computer;" it only identifies the ISP account through which the infringer's computer is connected to the internet.

13. The defendant denies that this paragraph accurately describes the interactions between computers participating in BitTorrent swarms generally, or the likely interaction of infringers monitored by Mr. Nicolini and CEG in this case. The defendant further denies that Discount Video has any basis for alleging that the 29 defendants, who have been sued solely because their names appear on ISP billing records as the account holders, actually used their accounts to download the plaintiff's film.

14. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph concerning geolocation. The defendant denies the allegation that the "time period during which the illegal downloads occurred is limited to ensure commonality amongst the defendants."

3

BitTorrent downloads rarely take more than a few hours, yet the downloading in this case took place over the course of eleven weeks. No other defendant downloaded *Anal Cum Swappers 2* the day Doe 22's account was allegedly used for that purpose, and the plaintiff cannot establish that any parts of the film were traded between the 29 alleged Massachusetts infringers.

**COUNT I**
**COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. §§ 101 ET SEQ.**

15. The defendant incorporates Paragraphs 1-14 of this Answer here.

16. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph.

17. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph.

18. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph.

19. The defendant denies that the listed IP addresses, which simply relate to the ISP account used to carry out the alleged download, "identify each Defendant. . .that has. . .reproduced and distributed to the public at least a substantial portion of the Motion Picture." At best, the IP addresses will identify the owner of the account through which the alleged infringer connected to the internet. The plaintiff has no good grounds, and no good faith or reasonable basis for alleging that any of those account holders themselves "reproduced and distributed" *Anal Cum Swappers 2*.

20. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the information in Exhibit A. The defendant denies that he or

she engaged in any infringement, and denies that the information in Exhibit A would identify the infringer in any of the other 28 alleged infringements.

21. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

22. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

23. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations concerning Exhibit B.

24. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

25. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

26. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

## COUNT II
## CONTRIBUTORY INFRINGEMENT

27. The defendant incorporates Paragraphs 1-26 of this Answer here.

28. The defendant lacks knowledge and information sufficient to form a belief concerning the truth of the allegations in this paragraph.

29. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

30. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

31. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

32. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

33. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

34. The defendant denies the allegations in this paragraph as they relate to Doe 22, and lacks knowledge and information sufficient to form a belief concerning the truth of the allegations as they relate to other defendants.

## DEFENSES AND AFFIRMATIVE DEFENSES

35. The Complaint fails to state a claim upon which relief may be granted.

36. The defendant is informed, and believes, that the plaintiff has already received a full award of statutory damages under 17 U.S.C. § 504(c)(1) and is not entitled to any further recovery.

## RELIEF REQUESTED

The defendant requests that judgment be entered against the plaintiff on all claims, that the defendant be awarded attorney's fees and costs pursuant to 17 U.S.C. § 505, and that the Court enter any other appropriate relief.

## JURY DEMAND

The defendant demands trial by jury on all claims and issues.

## COUNTERCLAIMS AGAINST PLAINTIFF DISCOUNT VIDEO CENTER, INC. AND COUNTERCLAIM DEFENDANTS BY JOINDER JON NICOLINI AND COPYRIGHT ENFORCEMENT GROUP, LLC

Doe 22 brings this counterclaim against plaintiff Discount Video Center, Inc. ("Discount Video") and against Copyright Enforcement Group, LLC ("CEG") and its "Chief Technology Officer," Jon Nicolini for creating and carrying out an extortionate scheme to blackmail innocent internet account holders into paying settlements for copyright infringements they did not commit, and alleges:

## PARTIES

1. Defendant Doe 22 brings this counterclaim against plaintiff Discount Video by authority of Fed. R. Civ. P. 13(b), alleging violation of M.G.L. c. 93A, § 9, Malicious Prosecution and Abuse of Process against plaintiff Discount Video. The

defendant/counterclaim plaintiff Doe 22 is a resident of the Commonwealth of Massachusetts. The plaintiff/counterclaim defendant Discount Video has principal offices in San Francisco, California.

2. Defendant Doe 22 brings this counterclaim against Jon Nicolini and his employer, Copyright Enforcement Group, LLC ("CEG"), by authority of Fed. R. Civ. P. 13(h) and 20(a)(2), as they are jointly and severally liable with plaintiff Discount Video for the counterclaims stated here. CEG is located at 8484 Wilshire Boulevard, Suite 220, Beverly Hills, California 90211. The defendant is informed, and believes, that Mr. Nicolini is a resident of California.

## JURISDICTION AND VENUE

3. The United States District Court has subject matter jurisdiction of the defendant's counterclaims under 28 U.S.C. § 1332, as the counterclaim plaintiff is a citizen of Massachusetts, the counterclaim defendants are citizens of California, and the amount in controversy exceeds $75,000.

4. The United States District Court for the District of Massachusetts is the proper venue for the counterclaims under 28 U.S.C. § 1391, as the extortionate scheme giving rise to the counterclaims was carried out in Massachusetts against Massachusetts residents.

## FACTS

5. Plaintiff Discount Video is a pornography publisher and has chosen to profit from internet piracy by engaging the services of The Copyright Enforcement Group ("CEG").

6.  CEG sells its services to the publishers of pornographic movies, including Discount Video, by promising to turn illegal downloading of copyrighted porn into a profit center. CEG promises its clients that they can  "Recoup Revenue from Digital Piracy:"

> *"Establish a new revenue source while offering infringers multiple settlement options with our Monetization service. Settlement offers are fully customizable and can include opportunities such as hard goods, subscriptions, licensing arrangements, straight settlements or any other offering of your choice. Your options are limitless.*
>
> *Content owners can choose a soft fan-friendly marketing based approach, a stringent graduated response system, models that include litigation, leveraging CEG's vast intellectual property attorney network or anything in-between.*
>
> *Our fully customizable Monetization service solution is available at no cost to content owners. Contact us for additional details."*

http://www.ceg-intl.com/monetization.html

7.  Discount Video purchased CEG's package of Monetization services, and "leverag[ed] CEG's vast intellectual property attorney network" by hiring Attorney Marvin Cable to bring this case. In collaboration with CEG, Mr. Cable has filed 34 cases for pornographers in the United States District Court for the District of Massachusetts against over 1500 Doe defendants. In this case, Discount Video, CEG and Mr. Cable seek to "monetize" the illegal downloading of Discount Video's film *Anal Cum Swappers 2* by suing 29 Comcast, Verizon, Road Runner and Charter Communications subscribers whose internet connections were allegedly used to download the film.

8.  Mr. Cable has filed 34 copyright infringement complaints for pornographers in recent months. Each case has a virtually identical Complaint For Copyright Infringement

9

and a Declaration of Jon Nicolini ("Chief Technology Officer" of CEG), explaining

how CEG identifies the Internet Protocol (IP) addresses used by copyright infringers.

9. The Complaint in this case, like the other 33, alleges without any qualifying

language—not even "information and belief"—that the subscriber/account holder

with Comcast, Verizon or other Internet Service Provider (ISP) is the individual who

illegally downloaded the plaintiff's copyrighted film:

a. **"[A]ll Defendants identified in Exhibit A (i) traded exactly the same file of the copyrighted work** as shown by the identical hash mark; (ii) traded (simultaneously uploaded and downloaded) the exact same file as is the nature of BitTorrent software; (iii) did so within a limited period of time; and (iv) collaborated as a group of uploaders to speed the completion of each download of file."

Complaint, ¶ 5 (emphasis added).

b. "Each Defendant is known to Plaintiff only by the Internet Protocol ("IP") address assigned to that Defendant by his, her or its Internet Service Provider on the date and at the time at which the infringing activity of each Defendant was observed. The IP address of each Defendant, together with the date and time at which his, her or its infringing activity was observed and the hash value of the file, is included on Exhibit A which is attached hereto."

Complaint, ¶ 7.

c. "Exhibit A [a list of the twenty-nine defendant/subscriber's IP addresses] identifies each Defendant (one Defendant per row in the table set out in Exhibit A) that has, without the permission or consent of the Plaintiff, reproduced and distributed to the public at least a substantial portion of the Motion Picture."

Complaint, ¶ 19.

10. In providing the technical grounds for the unqualified assertion that the account

subscriber is the infringer in every one of the 29 alleged illegal downloads, Mr.

Nicolini explains that "Each time a subscriber accesses the Internet, the ISP

automatically allocates a unique IP address to the subscriber." (Nicolini Declaration,

¶ 26.) Mr. Nicolini notes that his investigation "can only identify the infringers by their Internet Protocol Address ('IP address')" (Nicolini Declaration, ¶ 18). Mr. Nicolini carefully and deliberately avoids pointing out that a single IP address issued to a subscriber by Comcast or Verizon in many cases connects a large local network, consisting of many individual computers, to the internet.,

11.  Mr. Nicolini purposely avoids discussion of the number of computers that may have access to each defendant subscriber's account because he would then have to acknowledge that he, CEG and Discount Video have no good faith basis for suing subscribers, and that they would need to know far more than the subscribers' names and addresses in order to identify the downloaders. For example, Mr. Nicolini would have to acknowledge that he has no idea:

   a. Whether dozens or scores or hundreds of computers access the internet through each defendant subscriber's account using a local network, as is the case with Starbucks, the United States District Court, law firms and, very likely, his own company.

   b. Whether the defendant subscriber knows or exercises any control over the downloading activity of individuals who use the account.

   c. Whether the defendant subscriber has a computer at all, and, if so, whether the subscriber has BitTorrent client software on it.

12. Instead of acknowledging that each of the 29 subscriber accounts involved in this case could be used by many computers (and infringers) other than the subscriber, Mr. Nicolini deliberately deceives the Court by <u>presuming</u> that the subscriber is always the infringer:

   a. "Exhibit A [to the Complaint] lists on a Defendant-by-Defendant basis (one Defendant per row) the IP address associated with each Defendant, the identity of the ISP associated with the IP address, the Timestamp that the **infringement by that Defendant was observed by CEG**, and the **software protocol used by the Defendant in infringing the Plaintiff's Work.**"

11

Nicolini Declaration, ¶ 31 (emphasis added).

b.  "[T]he **Defendants** in this case all copied at least a substantial portion of the exact same accused file . . . ."

Nicolini Declaration, ¶ 34 (emphasis added).

c.  "[A]ll of the **infringers identified as "Doe" defendants** in the DISCOUNT VIDEO CENTER, INC. Complaint used BitTorrent software."

Nicolini Declaration, ¶ 32 (emphasis added).

d.  "While **Defendants engaged in this downloading and/or uploading of the file**, they exposed their globally unique public IP address."

Nicolini Declaration, ¶ 35 (emphasis added).

e.  "Plaintiff therefore identified each Doe Defendant in Exhibit A of the DISCOUNT VIDEO CENTER, INC. Complaint by the unique IP address assigned to the Internet subscriber by the subscriber's ISP at the date and time of the observation."

Nicolini Declaration, ¶ 35.

f.  "Plaintiff needs early discovery from the ISPs, and any intermediary ISPs that may be involved, so that the **names and addresses of the accused infringers** can be obtained by Plaintiff to enable it to enforce its rights in its copyright and prevent continued infringement."

Nicolini Declaration, ¶ 36 (emphasis added).

13. In moving for emergency discovery of the names and addresses of the 29 subscriber defendants, Discount Video falsely and deceptively represented to the Court that the subscribers <u>are</u> the infringers:

a.  "These **Doe defendants duplicated and distributed unauthorized and infringing copies of Plaintiff's motion picture**. Plaintiff has obtained the Internet Protocol ("IP") addresses assigned to the individual defendants; however, Plaintiff can only further identify the infringers by reference to subscriber information that is not publicly available."

Memorandum In Support Of Plaintiff's Emergency Ex-Parte Motion For Early Discovery ("Emergency Ex-Parte Memo"), pp. 1-2

12

(emphasis added).

b.  "Moreover, the evidence that **the Doe defendants infringed Plaintiff's copyright** is sufficiently concrete."

Emergency Ex-Parte Memo, p. 4 (emphasis added).

c.  "Plaintiff's investigator took rigorous steps in gathering the IP addresses at issue and confirming that **the Does behind these IP addresses were actually distributing infringing copies of the Plaintiff's work**."

Emergency Ex-Parte Memo, p. 4 (emphasis added).

d.  "In addition, **the subscriber information** Plaintiff is requesting from the ISPs is also narrowly-focused on allowing Plaintiff to discover the **identity of the infringers**. In particular, **Plaintiff is seeking to learn the subscribers' name**, address, email address, and Media Access Control ('MAC') address."

Emergency Ex-Parte Memo, p. 5 (emphasis added).

e.  "These Doe defendants duplicated and distributed unauthorized and infringing copies of Plaintiff's motion picture. Plaintiff has obtained the Internet Protocol ("IP") addresses assigned to the individual defendants; however, Plaintiff can only further identify the infringers by reference to subscriber information that is not publicly available."

Emergency Ex-Parte Memo, pp. 1-2.

14. The Complaint, Nicolini Declaration and Emergency Ex-Parte Memo were designed to deceive the Court into believing that the subscribers must be the infringers, and to obtain the Court's permission to subpoena the defendant subscribers' Internet Service Providers for the defendant subscribers' names and addresses. (Docket No. 7.)

15. Discount Video's Emergency Motion for Ex-Parte Early Discovery also sought and obtained an order requiring the ISP's to send a package of documents to each of the 29 defendant subscribers, containing copies of the Court's Order allowing the subpoenas and a "**Court Directed Notice**" that included, *inter alia*, the following passages:

13

"The subpoena has been issued because you have been sued in the United States District Court for the District of Massachusetts in Boston, Massachusetts, as a "John Doe" by the movie studio DISCOUNT VIDEO CENTER, INC. You have been sued for infringing copyrights on the Internet by uploading and/or downloading the motion picture 'Anal Cum Swappers 2.'"

**"YOUR NAME HAS NOT YET BEEN DISCLOSED. YOUR NAME WILL BE DISCLOSED IN 30 DAYS IF YOU DO NOT CHALLENGE THE SUBPOENA"**

"The movie studio may be willing to discuss the possible settlement of its claims against you. The parties may be able to reach a settlement agreement without your name appearing on the public record. You may be asked to disclose your identity to the movie studio if you seek to pursue settlement. If a settlement is reached, the case against you will be dismissed. It is possible that defendants who seek to settle at the beginning of a case will be offered more favorable settlement terms by the movie studio. You may contact the movie studio's representatives by phone at (413) 268-6500, by fax at (413) 268-6500, or by email at contact@marvincable.com."

16. The Notice and accompanying documents sent to Doe 22 by Comcast are attached as Exhibit A, with information that would identify Doe 22 redacted.

17. Sending ISP customers the package of Court-approved documents Comcast sent to Doe 22 (Exhibit A) is an extraordinarily effective method of extracting settlement payments from subscribers, even those who had been unaware that their internet connection was used to download copyrighted material and who could never have been found liable under federal copyright laws.

18. If Doe 22's Comcast internet service was used to download *Anal Cum Swappers 2*, as alleged, Doe 22 had no knowledge or reason to believe the downloading had occurred. If the download occurred as alleged, the infringer was using Doe 22's connection secretly and without authority. Doe 22 does not know who the infringer might be. Doe cannot be held liable under any theory of copyright infringement for the (alleged) use of Doe 22's internet service to download Discount Video's

copyrighted film.

19. Doe 22 has suffered damages in the form of attorney's fees to defend this lawsuit and

severe emotional distress in reaction to being sued without basis in a federal lawsuit

and threatened with damage to his or her reputation.

<u>COUNT I</u>
**Unfair and Deceptive Acts and Practices in Commerce
in Violation of M.G.L. c. 93A, § 9**

20. Doe 22 incorporates Paragraphs 1-19 of these Counterclaims here.

21. Discount Video, the Copyright Enforcement Group and Jon Nicolini have knowingly

and willfully engaged in unfair and deceptive acts and practices in commerce, in

violation of M.G.L. c. 93A, § 9, by the following conduct:

   a) Filing and prosecuting a Complaint, sworn Declaration of Jon Nicolini and
      Emergency Ex Parte Motion for Early Discovery that deliberately misled the
      United States District Court with the allegation that the Copyright
      Enforcement Group's investigation showed that the 29 subscribers whose
      internet connections were used to download *Anal Cum Swappers 2* were
      themselves the downloaders;

   b) Using the false filings to obtain a Court-ordered subpoena and a "**Court
      Directed Notice**" that were used by Discount Video, CEG and Nicolini to:

      1) frighten and intimidate every defendant subscriber, whether innocent
         or not, with news that they personally had been sued in federal court
         for downloading *Anal Cum Swappers 2*;

      2) panic every defendant subscriber, whether innocent or not, with the
         threat that their name would be **DISCLOSED** in 30 days if they did
         not take action;

      3) use the short time frame and threat of "disclosure" to terrify every
         defendant subscriber that they would be publicly shamed in federal
         court, whether innocent or not;

      4) convince every defendant subscriber that defending themselves on the
         merits would expose them to public shame, whether innocent or not;

      5) provide every defendant subscriber with three convenient ways to

15

contact Mr. Cable and settle "without your name appearing in the public record," with the added incentive that the first callers--whether innocent or not--would get easier terms than those who waited.

## COUNT II
### Malicious Prosecution

22. Doe 22 incorporates Paragraphs 1-17 of these Counterclaims here.

23. Directly suing the 29 defendant subscribers constitutes malicious prosecution because Discount Video, Nicolini and CEG knew when they filed the Complaint, Nicolini Declaration and Emergency Ex-Parte Motion for Early Discovery that they had no reasonable grounds to support the allegation that each of the 29 defendant subscribers had personally downloaded *Anal Cum Swappers 2*.

## COUNT III
### Abuse of Process

24. Doe 22 incorporates Paragraphs 1-19 of these Counterclaims here.

25. Directly suing the 29 defendant subscribers and deceiving the Court into approving subpoenas and notices that intimidated all named defendants, whether or not they had committed a copyright violation, constituted abuse of process. Discount Video, CEG and Nicolini intentionally used the lawsuit and subpoena to achieve an impermissible, collateral purpose that was not a legitimate goal of litigation—i.e., to blackmail non-liable subscribers into paying settlements because defending themselves on the merits, even successfully, risked shameful public disclosure that they had been accused of downloading *Anal Cum Swappers 2*.

### DEMAND FOR RELIEF ON COUNTERCLAIMS

Doe 22 demands judgment against Discount Video, CEG, and Nicolini, awarding Doe 22 the damages suffered as a result of the counterclaim defendants' unlawful

16

prosecution of groundless claims as alleged above, treble damages for the

counterclaim defendants' knowing and willful use of unfair and deceptive acts and

practices, attorney's fees for prosecuting these counterclaims, plus interest and costs.

## JURY DEMAND

Doe 22 demands trial by jury on all claims and counterclaims.

Respectfully submitted,

The Defendant,
Doe No. 22,

*/s/ Samuel Perkins*
Samuel Perkins, BBO# 542396
Thomas R. Donohue, BBO# 643483
Gregor A. Pagnini, BBO# 667659
Evan C. Ouellette, BBO# 655934
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
sperkins@bhpklaw.com
tdonohue@bhpklaw.com
gpagnini@bhpklaw.com
eouellette@bhpklaw.com

DATED: July 30, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

*/s/ Samuel Perkins*
Samuel Perkins, BBO# 542396

DATED: July 30, 2012