UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                         )
DISCOUNT VIDEO CENTER, INC.,          )
                                                         )
                    Plaintiff,                       )
                                                         )
v.                                                       )          Civil Action No. 12-10805-NMG
                                                         )
DOES 1-29, et al.,                               )
                                                         )
                    Defendants.                   )
_____)


MEMORANDUM AND ORDER ON MOTIONS TO QUASH

August 10, 2012


SOROKIN, C.M.J.

At issue in the pending motions is not the right of a copyright holder to enforce its copyright, but rather the proper application of the rules governing early ex parte discovery from persons who are not (at least at this time) parties to the pending lawsuit.  The issues are of particular importance because Congress has protected, to some extent, the privacy of these third parties.  In addition, there is a substantial likelihood that as to some number of these third parties, the Plaintiff will never allege that the third party has violated the Plaintiff's copyright.

I.       FACTUAL AND PROCEDURAL HISTORY

On May 4, 2012, the Plaintiff, Discount Video Center, Inc., filed its Complaint against twenty-nine John Doe Defendants (inter alia) alleging that each John Doe Defendant committed copyright infringement and contributory copyright infringement with respect to one of its

copyrighted works, a motion picture entitled, "Anal Cum Swappers 2."  Docket # 1.  The Complaint alleged that Discount Video's investigation had revealed that each Doe Defendant had downloaded at least a substantial portion of the Plaintiff's copyrighted work and had also made that copy available to others on the Internet.  Id. at ¶¶ 11-13.  Discount Video asserted that the Doe Defendants had "engaged in a series of related transactions or occurrences," because each Doe Defendant possessed "the same file of the copyrighted work as shown by the identical hash mark," each Defendant made the work available for others to copy via BitTorrent software and each did so within a two plus month period of time.  Id. at ¶¶ 11-14.[1]

On May 7, 2012, Discount Video filed an Emergency Motion for Discovery.  Docket # 5.  Because Discount Video had not yet completed service of process (and could not do so, because the identity of the infringers was as of yet unknown to it), the motion necessarily was unopposed.  Discount Video requested early discovery "for the sole purpose of identifying all Doe defendants ("Defendants") named in the Complaint by subpoenaing the Defendants' respective Internet Service Providers ('ISPs')."  Docket # 5.  Discount Video sought a court order pursuant to the Cable Privacy Act, 47 U.S.C. § 551(c)(2)(B), directing the ISPs to disclose the subscriber's personally identifiable information (subject to an opportunity for the subscribers to object prior to the disclosure occurring).  Id.; Docket # 6 at 6-7.  On May 8, 2012, the Court granted the

---

[1] According to the Complaint, "[t]he BitTorrent protocol makes home computers with low bandwidth capable of participating in large data transfers across so-called "Peer-to-Peer" (P2P) networks. The first file-provider decides to share a file ("seed") with a BitTorrent network Then other users ("peers") within the network connect to the seed file for downloading. As additional peers request the same file, they become part of the same network. Unlike a traditional P2P network, each new peer receives a different piece of the data from each peer who has already downloaded the file. This system of multiple pieces of data coming from peers is called a "swarm."  Docket # 1 at ¶ 9; See also Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 448 (D. Mass. 2011) (Young, J.).

motion.  Docket # 7.

On June 6, 2012, Defendant John Doe No. 2 filed a Motion to Quash or Modify Subpoena and Motion to Dismiss.  Docket # 8.[2]  Subsequently, John Doe No. 22 and John Doe No. 6 filed motions to quash.  Docket #s 12, 16.  John Doe No. 6 moved the Court for the right to proceed anonymously.  Docket # 15.  Does Nos. 2 and 22 made their filings anonymously, without filing motions specifically requesting the right to do so.  Discount Video has opposed these motions and has filed a supplemental memorandum at the direction of the Court in order to address a specific issue raised by the motions.  Docket # 17.  On July 30, 2012, the Court held a hearing at which counsel for Discount Video and Doe No. 22 appeared.[3]

II.    DISCUSSION

Pursuant to Fed. R. Civ. P. 45, a court must quash or modify a subpoena that:

(I) fails to allow a reasonable time to comply; (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regular transacts business in person . . . ; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3).

As a preliminary matter,  I find that good cause supports early <u>proper</u> discovery under Rule 26(d) (largely for reasons explained by other judges in similar cases) for the sole and limited purpose of identifying the Doe defendants sufficiently to name them as defendants and to

---

[2]  The Motion to Dismiss is the subject of a separate Report and Recommendation issued this date.

[3] Initially, the Court denied Doe No. 2's motion, then converted the order into a Report and Recommendation in light of the prayer for dismissal of the Complaint and then, as a result of receiving Doe No. 22's motion, vacated the Report and Recommendation to permit comprehensive treatment of all the objections together.  See <u>Electronic Order of July 10, 2012</u>.

serve the Complaint upon them.  See, e.g. Digital Sin v. Does 1-176, 279 F.R.D. 239, 241

(S.D.N.Y. 2012).  Fed. R. Civ. P. 26(d) provides that "[e]xcept . . . when authorized under these

rules or by order or agreement of the parties, a party may not seek discovery from any source

before the parties have conferred as required by Rule 26(f)."  In order for a party to obtain

expedited discovery before the Rule 26(f) Conference, it must show good cause. Fed. R. Civ. P.

26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject

matter involved in the action.").  The First Circuit has not addressed the proper standard for

determining whether good cause exists for expedited discovery; Judges of this Court have

allowed it in a variety of circumstances.  See Momenta Pharmaceuticals, Inc. v. Teva

Pharmaceuticals Industries Ltd., 765 F.Supp.2d 87, 88-89 (D.Mass.2011) (Gorton, J.) (finding

expedited discovery for purpose of determining need for injunctive relief in patent case to be

unwarranted absent showing of irreparable harm); McMann v. Doe, 460 F.Supp.2d 259, 265-66

(D.Mass.2006) (Tauro, J.) (permitting ex parte expedited discovery for purpose of determining

the identity of a John Doe defendant).

Here, there is good cause for expedited discovery because the Plaintiff has no other

means of determining the identity of its defendants.  Nonetheless, several material issues require

consideration. Each is discussed below, in turn.

The Identity of the Party Sued and Whether the Complaint Is Adequately Supported

Much of the Doe Defendants' opposition to the discovery is premised upon the

assumption that Discount Video has sued the subscriber to the internet service through which the

alleged infringement occurred ("the subscriber") rather than the person committing the

infringement via that internet service address ("the infringer").   A careful examination of the

pleadings and the record as it stands now supports the conclusion that in its Complaint, Discount Video has sued the infringers only, although the basis for the subscribers' confusion is plain.

The Complaint describes the John Doe Defendants in numerous instances as infringers. For example, Discount Video refers in the Complaint to "the infringing activity of each Defendant."  Docket # 1 at ¶ 7; See also Docket #1 at ¶ 11 ("all Defendants have not only swapped the same copyrighted work . . . [a]ll alleged infringers downloaded the exact same copyrighted work . . ."); Id. at ¶ 12 ("While Defendants engaged in this downloading and/or upload . . .") Id. at ¶ 19 ("Exhibit A identifies each Defendant . . . that has, without the permission or consent of the Plaintiff, reproduced and distributed to the public at least a substantial portion of the Motion Picture").[4]

Other passages in the Complaint, however, seemingly indicate that the Plaintiff has sued the subscribers.  For example, the Complaint refers to "the Internet Protocol ("IP") address assigned to that Defendant by his, her or its Internet Service Provider."  Id. at ¶ 7.  Throughout the Complaint, there are references to the Defendants as being identified in Exhibit A to the Complaint (which is itself a chart listing the IP addresses through which the infringement occurred).  See, e.g., Docket # 1 at ¶ 19.  These references equating the IP addresses with the Defendants may be interpreted as identifying the subscribers, or, they may be read as merely referring to the only identifying information which Discount Video possesses regarding the

---

[4] No one before the Court disputes that Discount Video has advanced sufficient evidence of infringing activity to support a claim for infringement against the unidentified alleged infringers.  The Court notes, however, that there is some question as to whether pornography is entitled to copyright protection.  See Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F.Supp.2d 444, 447 n.2 ("it is a matter of first impression in the First Circuit, and indeed is unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement").  This issue, however, is not presently before the Court.

infringers – i.e., the IP address through which the infringer accessed the internet.  The specific allegation in the Complaint that "each Defendant **contracted** with an Internet Service Provider (ISP)" (see Docket #1 at ¶ 3) (emphasis added) is commonly understood, especially in the context of a legal document such as a Complaint filed in a court of law, to mean that each Defendant is in a contractual relationship with the ISP – i.e., that each Defendant is the subscriber to the service provided at the internet address.[5]  The Plaintiff's memorandum in support of its motion for discovery further muddied the question of whom the Plaintiff sued by explaining that with the subpoenas it "seeks the identities of all Doe defendants from their respective Internet Service Providers."  See Docket # 6 at 1.  The only names possessed by the ISPs are the names of the subscribers.  While ultimately the Plaintiff may determine that a meaningful number of the subscribers are also the infringing Defendants, the Plaintiff does not now know that to be the case, as to any individual subscriber, nor will it know that simply as a result of having received the names and addresses of the subscribers.

Finally, the Notice attached to the subpoena seeking the name of the subscriber from the ISP (a document submitted to the Court by the Plaintiff) states unequivocally that the subscriber is the defendant in the lawsuit:

> The subpoena has been issued because **you have been sued**  in the United States District Court . . . as a "John Doe" by the movie studio DISCOUNT VIDEO CENTER, INC. **You have been sued for infringing** copyrights on the Internet . . .
>
> . . .
>
> **OTHER ISSUES REGARDING THE LAWSUIT AGAINST YOU**

---

[5]  If the language was intended to refer to the "contract" established between two computers communicating with each other (as the Plaintiff's counsel suggested at the hearing), this is at best surprisingly inartful drafting.

To maintain a lawsuit against you . .

Docket #5-1 at 4 (emphasis added in first paragraph of quotation).

Doe Defendant No. 22' s Motion to Quash highlighted for the Court the significance of the question of whom the Plaintiff had sued as well as the Plaintiff's varying descriptions of the Defendants in the Complaint.  To put to rest the question of the identity of the John Doe Defendants (i.e., whether subscribers or infringers), the Court ordered the Plaintiff to state in writing which group it had named as Defendants.  See Electronic Order of July 10, 2012.  In response, the Plaintiff stated unconditionally that the "John Does are the alleged infringers." Docket # 17 at 4.  At the hearing on the motions to quash, the Plaintiff's counsel reaffirmed this assertion.  The Court accepts this characterization of the Complaint for two reasons: it is the Plaintiff's binding stated intention; and it conforms with the better reading of the Complaint when read in isolation from the other documents filed in this case.

Given that the Plaintiff has sued the infringers, certain of the John Doe Defendants' complaints (such as abuse of process or lack of a good faith basis to support the Complaint) fall away as these complaints are all predicated upon the understanding that the Plaintiff has sued the subscribers rather than the infringers.  Nonetheless, these concerns are relevant to the Motions to Quash, especially in light of both the Plaintiff's failure to attend to the infringer/subscriber distinction and the plainly incorrect assertions in the Notice delivered to all of the John Does as part of the subpoena process.[6]  At the hearing, Discount Video asserted that it had sued only the infringers, yet it simultaneously resisted conceding that the Notice incorrectly told the subscribers

---

[6]  The Court recognizes that the Plaintiff submitted the Notice as part of its motion for emergency discovery which motion the Court allowed.   With the benefit of the adversary process, the Court has appreciated material problems with the Notice.  This only highlights the risks attendant to such ex parte proceedings.

that they had already been sued.  That the Plaintiff resists conceding the obvious is cause for

concern.  Two arguments seem to underlie the Plaintiff's resistance.

The Plaintiff's counsel wrote in a pleading filed in another (but substantially similar) case

filed in this District that the fact that an infringement occurred at particular IP address permits an

inference that the subscriber was the infringer, which would provide a good faith basis for naming

the subscriber as a defendant.  See Civil Action No. 12-10532-GAO, Docket # 19 at 7 (citing

United States v. Perez, 484 F.3d 735, 740 & fn. 2 (5th Cir.2007); and Civil Action No. 12-10532-

GAO, Docket # 35 at 2.  Neither in the instant case nor in either Civil Actions Nos. 12-10532-

GAO or 12-10758-GAO, have any of the plaintiffs pleaded any claim against a subscriber.  Thus,

resolution of the question is premature.

Insofar as the Plaintiff advances the theory in order to justify the Notice attached to the

subpoenas, the argument is without merit.  In the criminal search warrant context, the focus is

ordinarily on the subscriber's location rather than the individual subscriber.  In light of the

frequent sharing of IP addresses by family members, roommates, and co-workers (as well as the

possible access by outsiders to wireless networks),  the subscriber and the alleged Doe infringer

are not interchangeable, at least for purposes of the pending motions.  In Perez the Fifth Circuit

did state that "even discounting for the possibility that an individual other than [defendant] may

have been using his account, there was a fair probability that [defendant] was the user and that

evidence of the user's illegal activities would be found in [defendant's] home." Perez, 484 F.3d at

740 (quoting  United States v. Grant, 218 F.3d 72, 73 (1st Cir.2000)).  The statement cited was

made in the course of rejecting a defendant's claim for suppression of evidence which agents

acquired from the subscriber's residence in the course of executing a facially-valid warrant to

search a subscriber's residence because the agents learned during execution of the warrant that the address of the subscriber actually contained three separate residences with internet wires running from the subscriber's target residence to the other two units.  That statement, made in such a wholly different context, hardly supports informing subscribers that they have been sued in a Complaint which unquestionably names as defendants only the persons infringing via the subscriber's internet service and not the subscribers on the sole basis of their status as subscribers.

Accordingly, the subscribers should not have been told that they already were defendants.[7] Plaintiff's concession at the hearing that the subscriber appearing as Doe 22 has not been sued and is not a party merely confirms the point.  Moreover, the improper assertion in the Notice that subscribers are Defendants is significant in that it might well cause innocent subscribers (understandably concerned about the prospect of the threatened public identification as a copyright infringer of "Anal Cum Swappers 2") to accede to unreasonable settlement demands. See Digital Sin, 279 F.R.D. at 242 (the "risk of false positives gives rise to 'the potential for coercing unjust settlements from innocent defendants' such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally

---

[7] While it is possible, indeed likely, that some, perhaps many, of the subscribers are infringers and as such will become defendants in this case, they would become defendants on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized.  See Digital Sin, 279 F.R.D. at 242 (discussing the distinction between subscribers and infringers); Next Phase Distribution, Inc. v. John Does 1-27, 2012 WL 3117182 (S.D.N.Y. July 31, 2012) ("the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time").  Since the Plaintiff does not know which, if any, of the subscribers infringed their copyright, to tell them that they have been sued in federal court as part of a notice given to them as subscribers, when the Plaintiff has not sued them, is incorrect. Plaintiff's counsel has also suggested in some pleadings that he may assert liability against subscribers on a theory of secondary liability.  At present, the complaint does not assert such a theory and subscribers are not now defendants based upon such a theory.

downloading" pornography).  That the subscribers have a privacy interest created by Congress heightens this concern.  See 47 U.S.C.  § 551 (establishing, with limits, the privacy of certain personally identifiable information held by cable providers).

The Motions to Quash the Discovery

In light of the erroneous notice sent to the subscribers and the attendant risks and burdens imposed upon the innocent subscribers, the Court hereby QUASHES all twenty-nine of the subpoenas in this case.  The Plaintiff, within three business days of this Order, shall inform each recipient of the subpoenas of this Court's Order.  Each recipient is under no obligation to further comply with the subpoenas and each recipient is relieved of any obligation to respond to the subpoenas already issued.  In addition, in light of the erroneous notice and the privacy protections created by Congress for subscribers, the Court further ORDERS that neither the Plaintiff nor its counsel nor agents may use in any way the identities of the subscribers it has already obtained (or does obtain) as a result of the subpoena process except that the Plaintiff shall serve a copy of this Order on all of the subscribers whose identities it has learned to date (and such further subscribers, if any, it learns of in the future as a result of the subpoenas already issued).

Insofar as the Doe Defendants challenge the Plaintiff's right to take reasonable discovery properly at this stage of the case, the Court disagrees.  While the discovery request focuses on the subscriber's identity rather than directly upon the identity of the infringer, that is appropriate in this case, as it is the first step in the Plaintiff's effort to determine the identity of the infringer.  In civil cases, parties may take discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense–including the . . . location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P.

26(b)(1).  The Plaintiff may reasonably assert that the subscribers will, at least, have discoverable information concerning the identity or location of persons accessing the internet via the subscriber's internet address at time of the alleged infringements as well as the secured or unsecured nature of the internet access.

Accordingly, proper discovery of the identities of the subscribers is permissible and the quashing of the subpoenas is without prejudice to a renewed request for subpoenas proposing a proper notice and procedures.  The Plaintiff may, within thirty days, file a renewed request for early discovery.  Any such request shall, at a minimum: (1) explain how the proposed discovery pursuant to the rules of civil procedure will establish the identity of the Doe infringers or lead to sufficient information for the Plaintiff to identify the Doe infringers such that the Plaintiff can seek leave to amend the Complaint to insert the names of the Doe defendants; (2) propose a Protective Order ensuring the confidentiality of the subscribers' identifying information unless or until the Plaintiff has a good faith basis to seek leave to amend the Complaint to name individual subscriber(s) as Defendants (at which point it may file a motion for leave to amend the Complaint which motion it shall serve on the proposed Defendant) and (3) submit to the Court any notice(s) it seeks leave to serve with the subpoena.[8]

The Court may issue a Protective Order for good cause to spare parties or persons from whom discovery is sought "annoyance, embarrassment, oppression or undue burden."  Fed. R. Civ. P. 26(c)(1).  Several considerations support the finding of good cause in this case.  Plainly,

---

[8]  The proposed Protective Order shall include a provision that each such person receiving access to the protected information shall agree to abide by the terms of the Protective Order and shall sign a copy of the Court's Protective Order (acknowledging receipt of the Order and understanding of its terms).  It shall also provide that use of the information is limited to purposes related to this litigation.

some, perhaps many, of the subscribers are <u>not</u> infringers.  At present, the subscribers are not parties, but merely third parties from whom discovery is sought.  Congress has enacted privacy protections for cable subscribers' personally identifiable information.  47 U.S.C. § 551.   In these circumstances, a protective order is warranted.


<u>The Doe Defendants' Assertions of Bad Faith</u>

The claims of extortionate, unfair and deceptive or bad faith settlement practices are beyond the scope of the pending motions and it is not necessary to resolve them at this time, in light of the Court's rulings <u>supra</u>.  The Court notes that the Plaintiff has responded to each motion to quash on the merits and asserts it is willing to litigate this case to its conclusion.

At this time, the Court declines to make a finding regarding the bad faith issue in this case arising from the Plaintiff's assertion in the Notice that the subscriber has been sued in federal court.  However, the Court would evaluate differently any claims arising from future assertions that subscribers are Defendants and further cautions the Plaintiff to distinguish carefully between the allegations it has made at any given time and the allegations it believes it will be able to make in the future.

<u>The Status of Doe Defendants Nos. 2, 6 and 22</u>

Given the Plaintiff's construction of its Complaint, accepted by the Court, and its further concessions at the hearing, John Doe Nos. 2, 6 and 22 are <u>not</u> at present parties to the pending Complaint – rather, they are the subjects of third-party discovery.  This is true of all twenty-nine Doe defendants.  Thus, none of the Doe Defendants are under any obligation to answer the Complaint or to otherwise appear in this action, absent receipt of a further subpoena or other

process.

Joinder

The Does also challenge the Plaintiff's decision to join all twenty-nine of them in one action. Pursuant to Fed. R. Civ. Pro. 20, persons may be joined in one action as defendants if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "The impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties." United Mine Workers of America v. Gibbs, 383 U.S. 715, 724 (1966).

The Plaintiff has alleged that Doe Defendants 1-29 were part of a BitTorrent swarm that infringed upon the Plaintiff's rights by collectively downloading and distributing the same exact file of its copyrighted work. At the hearing, the Plaintiff clarified and explained its allegations in two respects. The twenty-nine Doe Defendants were part of a much larger BitTorrent swarm – however, they are the only members of the swarm whom the Plaintiff believes to be located in Massachusetts, at least as of the time it prepared the Complaint. In addition, the infringing activity observed by the Plaintiff was the act of each uploading via BitTorrent the Plaintiff's copyrighted work to the Plaintiff's investigators (which uploading establishes, according to the submissions, that the defendant possesses all or a substantial portion of the Plaintiff's work within BitTorrent, a form of distribution not authorized by the Plaintiff).

While a person downloading a file via BitTorrent (in this case the Plaintiff's movie) will obtain pieces of the file from multiple members of the BitTorrent swarm, the Plaintiff does not

know at this time from which members of the swarm any particular Doe Defendant obtained its copy of the file, or to which members of the swarm any particular Doe Defendant gave portions of its file.  Thus, for example, as to Doe Defendant No. 1, the Plaintiff has not alleged that Doe No. 1 uploaded or downloaded any portion of the copyrighted work to or from any of the other Doe Defendants named in this Complaint.  Because the swarm may well contain many members from other parts of the United States or from other countries, the possibility exists that each Doe Defendant's only connection to the other Doe Defendants is his or her possession of the same copyrighted work obtained by the same mechanism, BitTorrent, via the same swarm.

The proper remedy for improper joinder is a motion for severance by a party, rather than a motion to quash subpoenas by a third party.  Fed. R. Civ. P. 21.  In Liberty Media Holdings, LLC v. Swarm Sharing Hash File, 821 F. Supp. 2d 444, 451 (D. Mass. 2011), Judge Young found that the existence of membership in the collective swarm sufficed to authorize joinder.  Thus, while "certain defendants may later present different factual circumstances to support individual legal defenses, at this stage in the litigation, joinder is proper based on the common questions of law and fact identified."  Id.  Many courts, like Judge Young, have found this joinder permissible while many others have rejected it.  See Next Phase, 2012 WL 3117182 at *3-4 (surveying recent "inconsistent [district court] holdings regarding whether defendants who participated in the same swarm on BitTorrent and downloaded the same file satisfy the transaction-or-occurrence standard and can be properly joined").  The analysis depends to some extent upon factors (such as the defenses asserted by the eventual defendants and the number of defendants identified and appearing) not yet known.  On the present state of the pleadings in this case, without any Defendant to this lawsuit having yet appeared (see supra), the Court declines to reach the

assertions of improper joinder.

### John Doe No. 6's Notice and Service Claims

John Doe No. 6 asserts that the Plaintiff failed to serve the subpoena in a timely fashion and failed to give him a reasonable time to respond.  These objections are MOOT in light of the Court's rulings, supra.

### Subscribers Proceeding Anonymously

I find that the subscribers seeking to object anonymously in this case may do so, largely for the reasons already explained that warrant a protective order.  Whether additional procedures in this regard are required can be addressed, as necessary, regarding future filings.

III.    CONCLUSION

The Court hereby:

1.    QUASHES all of the subpoenas issued pursuant to the permission for early discovery;

2.    ALLOWS IN PART the Motions to QUASH (Docket #s 8, 12, 15, & 16) as explained herein;

3.    PROHIBITS the Plaintiff, its counsel and its agents from using in any way the identities of the subscribers it has already obtained (or does obtain) as a result of the subpoena process (except that within three days, the Plaintiff shall serve a copy of this Order upon all of the subscribers whose identities it has learned to date (and such further subscribers, if any, it learns of in the future as a result of the already issued subpoenas);

4.    ORDERS that within three days, the Plaintiff shall notify each ISP recipient of a subpoena that it shall immediately cease all efforts to comply with the subpoena

and shall provide each ISP with a copy of this Order.

Notwithstanding the foregoing, the Plaintiff may, within thirty days, request leave for early discovery as explained herein.  Insofar as John Doe No. 2 seeks dismissal, that request is the subject of a separate Report and Recommendation issued today.

SO ORDERED,

     /s / Leo T. Sorokin
Leo T. Sorokin
CHIEF UNITED STATES MAGISTRATE JUDGE