UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETS

Docket No.: 12-CV-10805-NMG

DISCOUNT VIDEO CENTER, INC.,

    Plaintiff,

    v.

DOES 1-29,

    Defendants

## DOE NO. 22'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM

Doe 22 moves to dismiss this case in its entirety because the plaintiff, through its counsel, Marvin Cable, has engaged in a continuing fraud on the Court that can only be appropriately remedied by dismissal with prejudice.

## MEMORANDUM OF LAW

**I.    History of Underlying Litigation**

Plaintiff's counsel Marvin Cable filed 34 copyright violation lawsuits on behalf of pornographers in the United States District Court for the District of Massachusetts between March 23, 2012 and May 26, 2012, naming over 1500 Doe defendants, using complaints and supporting affidavits that were identical except for the parties and movies involved. In each case, he used identical emergency motions for early ex parte discovery that sought from Comcast, Verizon and other providers the names and addresses of internet subscribers whose accounts had allegedly been used to download copyrighted pornography. In each case, he convinced the Court to issue a "Court Approved Notice" to subscribers, telling them they were being sued for downloading pornography and that

1

their name would be "DISCLOSED" to the pornographers if they did not either: a) defend themselves; or b) settle with Mr. Cable.

When Comcast and Verizon[1] delivered the court-ordered notice to their subscribers, stating (falsely) that they were being sued for illegal downloading, a certain percentage of them panicked and called Mr. Cable to settle. The price of settlement appears, for unknown reasons, to vary between $4,500 and $3,500. At this point, Mr. Cable's investment was $350 to file each of the thirty-four cases, some costs to reimburse Comcast and Verizon for turning over the names and addresses of subscribers, and the time it took to prepare a complaint, affidavit and motion for ex parte emergency discovery.

II.     **The Plaintiff Seeks to Extort Settlements From Subscribers, Whether or Not They Were Involved in Downloading.**

Once the Court granted Mr. Cable's Emergency Motion for Ex Parte Discovery and allowed him to subpoena subscriber identities from the internet service providers, he had no further need for the federal court—and no intention to proceed with any litigation, other than to oppose motions to quash his subpoenas. Mr. Cable tricked[2] the federal court into helping him get a mailing list of subscribers, much like a collection agency that obtains a list of supposed debtors and uses every available means other than litigation—letters, phone conversations, emails—to extract payment.

---

[1] Other, less well-known internet service providers have also been involved. For simplicity this Motion will refer to Comcast and Verizon, as they dominate the market.

[2] A detailed analysis of the misleading statements in the Complaint and Declaration of Jon Nicolini, which were used to deceive federal judicial officers and obtain permission to subpoena subscriber names and addresses, is set out in Doe No. 22's Answer and Counterclaims Against Discount Video Center, Inc., Jon Nicolini and Copyright Enforcement Group, LLC, Document 20, filed July 30, 2012.

The key difference between Mr. Cable and a collection agency is that collection agencies believe they are dunning the liable party. In contrast, Mr. Cable knows that a substantial percentage of subscribers—one of his colleagues estimated 30%[3]--were not involved in downloading the plaintiff's copyrighted material. Mr. Cable has acknowledged that he knows the subscribers are not necessarily the infringers on multiple occasions, including a July 30 hearing before U.S. Magistrate Leo Sorokin:

> MR. CABLE: . . . . I guess the subscribers are not necessarily the people who are the infringers, but sometimes they are.

July 30 Tr., *Discount Video, Inc. v. Does 1-29*, 12-CV-10805-NMG, p. 15.

> THE COURT: And I assume the reason you haven't sued the subscribers is because you don't believe you have a good-faith basis under Rule 11 to assert at the moment – or at least not at this moment, but at the moment when you filed the complaint – a claim directly against them.
>
> MR. CABLE: Against them, right.
>
> THE COURT: Because of the uncertainty as to on any given case as to whether the infringer was the subscriber, --
>
> MR. CABLE: Uh-huh.
>
> THE COURT: -- or a relative of the subscriber living in the same household, or whether it was someone sharing the Internet service in the same household –
>
> MR. CABLE: Right.
>
> THE COURT: -- but wasn't a subscriber, or a guest who used Internet service, or a person who accessed the Internet service through the wireless router either without permission because it was unsecured or without permission because they broke into it.
>
> MR. CABLE: Right.

July 30 Tr., p. 16.

---

[3] This estimate is discussed in Doe 22's Motion to Quash Subpoena and to Sever Claims in 1:12-cv-10805-NMG, Document 12, filed July 9, 2012, p. 3.

Moreover, Mr. Cable knows that under copyright law a subscriber can only be held "secondarily" liable for another individual's downloading of copyrighted material if the subscriber "infringes contributorily by intentionally inducing or encouraging direct infringement," or "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it. . . ." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005). Because of these difficult-to-prove evidentiary requirements for secondary liability, Mr. Cable's thirty-four District of Massachusetts lawsuits only assert claims against the individual who performed the download, not against subscribers who may be secondarily liable:

> MR. CABLE: . . . And we did not put in the complaint any secondary liability claims like vicarious liability, contributory liability of unfair enrichment or any sort of claims like that, but those are foreseeable at least with some of these subscribers.

July 30 Tr., p. 15.

Mr. Cable's concessions mean this: the "Doe" defendants he has sued are only those individuals who personally downloaded copyrighted movies. Unless the subscriber personally participated in the downloading, Mr. Cable disclaims any intention to sue the subscriber.

### III.  **Mr. Cable Misled the Court on July 30**

In the course of an extended Socratic exercise at the July 30 hearing, Magistrate Sorokin also confirmed with Mr. Cable that Mr. Cable was only subpoenaing subscribers' names and addresses so that he could take discovery from them and identify the individual who had personally downloaded copyrighted material:

4

> THE COURT: If I follow the path Mr. Perkins suggests, are you prepared to take – is what you're going to want to do is seek depositions of these people [i.e., subscribers]?
>
> MR. CABLE: We would prefer interrogatories as opposed to depositions, because of the practical matter of going to each deposition; but yes, we will go through on all of them.
>
> THE COURT: Okay.
>
> MR. PERKINS: Can't do interrogatories to a non-party.
>
> THE COURT: What about that?
>
> MR. CABLE: We depose them.
>
> THE COURT: So you'd be prepared to take depositions.
>
> MR. CABLE: That's correct.

July 30 Tr. p. 47-48.

Following the July 30 hearing, Magistrate Sorokin confirmed Mr. Cable's representations in multiple orders, including the following:

> Plaintiff has stated unconditionally both in pleadings and at the hearing on the motions to quash that the Defendants in this case are not the subscribers to the IP addresses detailed in Exhibit A to the Complaint, but rather the alleged infringers of the Plaintiff's copyright who utilized those IP addresses (but who may or may not be the same individuals as the subscribers). See Order on Motions to Quash at 4-10. Given this position, which the Court accepts, John Doe No. 2 is not presently a Party, but rather a third party from whom the Plaintiff seeks discovery. . . .

Report And Recommendation On Motion To Dismiss Of John Doe No. 2, 1:12-cv-10805 NMG, Document 32, August 10, 2012, p. 1.

On August 10, Magistrate Sorokin also granted Doe 22's Motion to Quash in the *Discount Video* case (1:12-cv-10805) and entered the same order *sua sponte* in two other cases that had been referred to him, *Patrick Collins, Inc. v. Does 1-79*, 1:12-cv-10532 and *Patrick Collins, Inc. v. Does 1-36*, 1:12-cv-10758. In each case, his order prohibited Mr.

Cable from using the subscriber names he had already obtained with the quashed subpoenas:

> PROHIBITS the Plaintiff, its counsel and its agents from using in any way the identities of the subscribers it has already obtained (or does obtain) as a result of the subpoena process (<u>except</u> that within three days, the Plaintiff shall serve a copy of this Order upon all of the subscribers whose identities it has learned to date (and such further subscribers, if any, it learns of in the future as a result of the already issued subpoenas). . . .

Order on Pending Motions to Quash, 1:12-cv-10532 Document 36, ¶ 2; Order on Pending Motions to Quash, 1:12-cv-10758 Document 30, ¶ 2; Memorandum and Order on Motions to Quash, 1:12-cv-10805, Document 31, p. 15, ¶ 2.

Although Magistrate Sorokin's order prohibiting use of the subscriber names only applied to the three cases referred to him, the issues are identical in the thirty-four carbon-copy infringement cases Mr. Cable has brought. Furthermore, aside from the fact that a prudent attorney would have behaved as if the order applied to all his cases, Mr. Cable had agreed at the July 30 hearing that his only goal in obtaining subscriber names was to take their depositions and discover the identity of the infringer. If Mr. Cable was telling the truth, his representations to Magistrate Sorokin would mean he would behave consistently in all of the thirty-four indistinguishable cases pending in this district. And if Mr. Cable meant what he said, he would have avoided taking any action after July 30 in any of his cases that presumed the subscriber was always the downloader.

Despite his assurance to the Court on July 30 that subscribers were not defendants, and that he would treat them as third party witnesses who might lead him to the infringers, Mr. Cable immediately reverted to form after his representations to the Court on July 30. On August 15 and 16, 2012,[4] he sent three letters to subscribers whose

---

[4] The August 15 and August 16 letters are identical form letters, used by Mr. Cable repeatedly to force settlement with subscribers. Doe 22 has received copies of earlier examples, one of which is discussed in Doe 22's Supplemental Memorandum in Support of Motion to Quash Subpoena, Document 24, filed

6

names had been disclosed pursuant to one of Mr. Cable's carbon-copy subpoenas in *Digital Sin, Inc. v. DOES 1-45*, 12-cv-10945-GAO, *New Sensations, Inc. v. Does 1-83*, 12-cv-10944-NMG and *Media Products, Inc. d/b/a Devil's Film v. Does 1-120,* 1:12-cv-30100-KPN. Each letter contained the following passages:

> On behalf of Plaintiff, we may formally name you as a defendant (i.e., as an alleged infringer of Plaintiffs copyright in the above-named motion picture) in the above-identified case, or in a subsequent case, if a settlement is not reached in connection with the alleged infringement that occurred on a computer using your Internet account by the close of business on Tuesday, September 4, 2012.
>
> In connection with any such case, we will seek, among other things, an award for the above-identified infringement that occurred on your Internet account for damages of up to $150,000 for willful infringement, and up to $30,000 for non-willful infringement, under the statutory damages provisions of the Copyright Act (17 U.S.C. § 504(c)), as well as costs, attorney fees, and a permanent injunction.
>
> \* \* \* \*
>
> You have an opportunity to settle now the alleged infringement that occurred on a computer using your account. The settlement fee is $3,500.00. As indicated above, the settlement fee must be received by us, on behalf of Plaintiff, by the close of business on Tuesday, September 4, 2012. Otherwise, we will proceed to enforce Plaintiffs copyright with the understanding that you do not intend to resolve this matter without a lawsuit.

The three letters of August 15 and 16 are attached as Exhibits A-C, with the identity of each subscriber redacted.

While Mr. Cable's letter of August 15 used subscriber information from a case that was not included in Magistrate Sorokin's August 10 order, and thus did not directly violate the August 10 order that "PROHIBITS the Plaintiff, its counsel and its agents from using in any way the identities of the subscribers it has already obtained (or does obtain) as a result of the subpoena process," the letter cannot be reconciled with Mr.

---

August 3, 2012. Doe 22 focuses on the August 15 and 16 letters here because they confirms that Mr. Cable continued to send such letters <u>after</u> making the quoted representations to Magistrate Sorokin on July 30 and <u>after</u> receiving Magistrate Sorokin's August 10 order prohibiting Cable from using subscriber names for any purpose in three of the thirty-four pending District of Massachusetts cases.

Cable's representations to Magistrate Sorokin: Cable assured the Magistrate on July 30 that his goal was to take the depositions of the subscribers, in hopes of identifying infringers. Instead, Mr. Cable's August 15 letter confirms that he deliberately misled Magistrate Sorokin, just as he had misled every presiding judge in the thirty-four Massachusetts cases to obtain early discovery of subscriber names. All Mr. Cable wants, and all he has ever wanted, is the identities of the subscribers. He never had any intention of taking subscriber depositions, and doesn't care who the infringer is. He just wants to extort money from subscribers, guilty or innocent.

The August 15 and 16 letters confirm that Mr. Cable's plan is to fleece subscribers without regard to their copyright infringement liability. The letter doesn't ask who did the downloading; it just tells the subscriber they will be publicly shamed as a pornography downloader, and sued for between $30,000 and $150,000, unless they deliver $3500 dollars to Mr. Cable's office within three weeks. As Magistrate Sorokin confirmed with Mr. Cable on July 30, suing a subscriber without further investigation—precisely what the August 15 letter threatens—would violate Fed. R. Civ. P. Rule 11, which requires that to " the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . .the factual contentions [i.e., that the subscriber is the downloader] have evidentiary support." Fed. R. Civ. P. 11(b)(3).

> THE COURT: And I assume the reason you haven't sued the subscribers is because you don't believe you have a good-faith basis under Rule 11 to assert at the moment – or at least not at this moment, but at the moment when you filed the complaint – a claim directly against them.
>
> MR. CABLE: Against them, right.
>
> THE COURT: Because of the uncertainty as to on any given case as to whether the infringer was the subscriber, --

      MR. CABLE: Uh-huh.

July 30 Tr., p. 16.

      Mr. Cable's August 15 and 16 letters threaten to amend his complaint to publicly identify a subscriber, with no further investigation, and to seek up to $150,000 in statutory damages. This threat to a subscriber confirms that Mr. Cable was deliberately misleading Magistrate Sorokin on July 30, and will continue to extort settlements from subscribers as long as he can dupe federal judicial officers into helping him get subscriber names and addresses. That point was made shortly after the July 30 hearing, when counsel for Doe 22 submitted a July 5 letter from Mr. Cable to a subscriber and pointed out to the Court that:

> The attached letter confirms that Mr. Cable's ultimate goal in the litigation is to extort $4,500[5] from each subscriber immediately after he learns the subscriber's name and address, without ever bothering to inquire whether the subscriber is the infringer or to waste any effort on establishing the merits of his claim.

Doe 22's Supplemental Memorandum in Support of Motion to Quash Subpoena, filed August 3, 2012 in Discount Video Center, Inc. v. Does 1-29, 1:12-ccv-10805 NMG.

      Mr. Cable's Response To Supplemental Memo (ECF #25), filed August 7, 2012, again shows that he will deceive the Court as long as he can get away with it. He asserts that his goal in getting subscriber names is "for both a rational and legitimate purpose: to figure out the identity of infringers so they may be served." (Response p. 1.) But he concedes that "many times," after undertaking no further investigation into the identity of the infringer, he sends out demand letters claiming he will amend his complaint to name the subscriber as the infringer if he doesn't receive $3500 (or $4500) within three weeks. (Id., p. 2.)

---

[5] The settlement demand varies in Mr. Cable's letters or emails to subscribers between $3500 and $4500, suggesting that Mr. Cable and his clients are testing the market to see which price point yields the highest revenue.

Magistrate Sorokin's August 10 order quashing Mr. Cable's subpoenas bent over backwards to avoid a direct ruling on Doe 22's claims that Mr. Cable was proceeding in bad faith. But the Court did draw a line in the sand:

> At this time, the Court declines to make a finding regarding the bad faith issue in this case arising from the Plaintiff's assertion in the Notice that the subscriber has been sued in federal court. However, the Court would evaluate differently any claims arising from future assertions that subscribers are Defendants and further cautions the Plaintiff to distinguish carefully between the allegations it has made at any given time and the allegations it believes it will be able to make in the future.

Memorandum And Order On Motions To Quash, 1:12-cv-10805-NMG August 10, 2012, p. 12.

Mr. Cable's August 15 and 16 letters steps over Judge Sorokin's line, claiming without any investigation or good faith basis that the subscriber will be named and sued as the infringer—unless money arrives in the interim.

Mr. Cable's recent filings in District of Massachusetts cases demonstrate that he continues to mislead the Court. On August 21, 2012 he opposed a Motion to Quash in another infringement case, and once again falsely represented to the Court that his goal in obtaining subscriber names and addresses was to take discovery from subscribers and attempt to identify the infringer:

> It is true that Plaintiff only knows the IP address where the infringement occurred and the sought subscriber information will only reveal the identity of the subscriber of that IP address. However, since the only information that the Plaintiff can get is the subscriber's' [sic], Plaintiff's only place to start discovery is by requesting subscriber's' [sic] identity. And this is permissible. . . . As owner of the IP address through which the alleged infringement occurred, Plaintiff may reasonably assert that a Doe will, at least, have knowledge of the identity or location of persons who know of any discoverable matter, e.g., the names and related information of the other users, if any, of the IP address during the relevant time period. Thus, whether or not Plaintiff has sufficient information to connect a subscriber to an alleged infringer using subscriber's IP address should not preclude the discovery sought.

Plaintiff's Opposition to Sever and Dismiss Claims and to Quash Subpoena [sic], filed August 21, 2012 in *Digital Sin v. Does 1-45*, 1:12-cv-10945-GAO, pp. 11-12.

Within the last few days Mr. Cable has, speaking out of both sides of his mouth, a) assured the Court that subscribers are not defendants, and that he will simply use subscriber information to "start discovery" of the true infringer's identity; and b) sent subscribers letters saying they will be named as defendants in three weeks if they don't send him thousands of dollars. It is no surprise that his letters to subscribers demanding payment never ask whether the subscriber is the infringer. That is because the only purpose of Mr. Cable's thirty-four lawsuits in Massachusetts is to get subscribers' identities and pressure them for quick settlements. Mr. Cable has never and will never care who the real downloader is, and will never actually litigate an infringement case against an identified Doe—except, perhaps, in one or two token cases as a strategy to avoiding being sanctioned for deceiving the Court.

**IV.      The Only Appropriate Sanction Is Dismissal With Prejudice.**

Magistrate Sorokin's August 10 order attempted to set Mr. Cable straight, and gave him the opportunity to proceed with discovery if he cleaned up the misrepresentations and did appropriate discovery to find infringers. Mr. Cable may have complied with the narrowest reading of that order, which extended to three of the thirty-four pending cases; but he proceeded without a second thought in his other cases to send extortionate letters to subscribers—behavior that was prohibited by Magistrate Sorokin's order in three identical cases. Most attorneys would conclude that ignoring Magistrate Sorokin's Order in the other thirty-one identical cases constituted bad faith and verged on contempt. It is evident that Mr. Cable will continue to mislead the federal court and will

continue to extort settlements until stopped by orders issued by every Court he has deceived.

There are overwhelming grounds for sanctioning Mr. Cable's behavior by dismissing all thirty-four District of Massachusetts cases with prejudice. Deliberately deceiving the Court to obtain early ex parte discovery is obstruction of justice, in violation of 18 U.S.C. § 1503, and a violation of multiple provisions of the Massachusetts Rules of Professional Conduct. (See, e.g., *In The Matter Of Thomas M. Finneran*, 2010 WL 360666 (Ma.St.Bar.Disp.Bd.). Deliberately misleading the federal court in order to obtain advantage in litigation, "fraud on the Court," is grounds in the First Circuit for dismissal with prejudice. When "a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier," the Court can respond by dismissing the case outright. *Hull v. Municipality of San Juan*, 356 F.3d 98, 102 (1st Cir. 2004).

Mr. Cable started out by convincing judges to allow discovery by telling them subscribers were downloaders. When challenged with Motions to Quash that pointed out that subscribers weren't necessarily infringers, Mr. Cable shifted ground (to avoid Rule 11 sanctions) and told the Court in written filings and oral argument that he simply wanted to use subscribers as witnesses who might lead him to the actual infringers. After making these representations, he continued to exploit subscriber information by telling subscribers they would be named as defendants unless they settled within three weeks. These written threats were sent <u>after</u> Magistrate Sorokin ruled on August 10 that the "inference that the subscriber was the infringer. . . is without merit." (Memorandum And Order On Motions To Quash, 1:12-cv-10805-NMG, August 10, 2012, p. 8) and after he

prohibited Mr. Cable from sending such letters in three cases. This continued pattern of deception calls for a simple and definitive remedy, and this case—together with all thirty-four pending District of Massachusetts cases—should be dismissed.

        Respectfully submitted,
        The Defendant,
        Doe No. 22,

        /s/ Samuel Perkins
        Samuel Perkins, BBO# 542396
        BRODY, HARDOON, PERKINS & KESTEN, LLP
        One Exeter Plaza
        Boston, MA 02116
        (617) 880-7100
        sperkins@bhpklaw.com

        DATED: August 24, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.

        /s/ Samuel Perkins
        Samuel Perkins, BBO# 542396

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

The undersigned counsel hereby certifies that I have conferred and corresponded with counsel for the plaintiffs and have attempted in good faith to resolve or narrow the issues raised in this motion.

        /s/ Samuel Perkins
        Samuel Perkins, BBO# 542396

DATED: August 24, 2012